**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable William J. Martínez**

Civil Action No. 13-cv-02247-WJM

GENERO ZUNIGA,

      Applicant,

v.

JAMES FALK, Warden of Sterling Correctional Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER DENYING §2254 APPLICATION

---

Applicant, Genero Zuniga, is a prisoner in the custody of the Colorado

Department of Corrections (DOC) at the correctional facility in Sterling, Colorado.  Mr.

Zuniga, acting *pro se*, has filed an Amended Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 (ECF No. 6) challenging the validity of his conviction in

Arapahoe County, Colorado, District Court Case No. 04CR1690.  Respondents filed an

Answer on July 11, 2014 (ECF No. 25), and Applicant filed a Reply on August 28, 2014,

after obtaining an extension of time (ECF No. 31).  Having considered the same, along

with the state court record, the Court concludes that the Amended Application should

be denied.

### I.  BACKGROUND AND STATE COURT PROCEEDINGS

Following a gang-related shooting, Mr. Zuniga was convicted in Arapahoe

County District Court Case No. 04CR1690 of first-degree murder after deliberation,

three counts of attempted first-degree murder after deliberation, conspiracy to commit

first-degree murder after deliberation, and second-degree assault.[1]  The Colorado Court

of Appeals provided the following summary of the evidence at Applicant's trial:

> According to the prosecution, Zuniga and his codefendant, Antonio Stancil, drove into a 7-Eleven parking lot and noticed a group of high school age boys in another car. Zuniga displayed a gang sign identifying him as a member of the Bloods to the boys. In response, one of the boys, a self-described "wannabe" gangster, displayed the sign for a rival Crips gang. The defendants' car left the 7-Eleven, made a U-turn, and waited for the boys to leave. The defendants then followed them for two miles down a residential street, pulled alongside of their car, and opened fire. The driver was killed, and one passenger was wounded.
>
> The next morning, police officers responding to an unrelated call discovered a car matching the description of the shooters'.  Zuniga and Stancil were arrested that morning at the residence of K.W., the owner of the car.

*People v. Zuniga*, No. 05CA1623 (Colo. Ct. App. May 13, 2010) (unpublished) (*Zuniga*

*I*) (ECF No. 13-4, at 2-3).

Applicant was sentenced to a prison term of life without the possibility of parole,

plus 128 years. (*Id.*).  His convictions were affirmed on appeal in *Zuniga I*.  (ECF No.

13-4).

On November 4, 2010, Mr. Zuniga filed a motion for postconviction relief

pursuant to Colo. Crim. P. Rule 35(c), which was denied summarily by the state district

court on December 1, 2010.  (ECF No. 13-1, at 12; No. 13-9, at 2).  The Colorado Court

of Appeals affirmed the trial court's order in *People v. Zuniga*, No. 11CA0072 (Colo.

App. Oct. 4, 2012) (unpublished) (*Zuniga II*). (ECF No. 13-9).  On April 29, 2013, the

Colorado Supreme Court denied certiorari review.  (ECF No. 13-10).

On August 21, 2013, Mr. Zuniga filed his original habeas corpus application

(ECF No. 1) with the Court.   Mr. Zuniga asserts the following claims in the Amended

---

[1]State Court R., Court File, at 274-83.

Applicaiton:

> (1) The trial court's failure to sever Applicant's case from the codefendant's violated due process.  (ECF No. 6, at 5-7).

> (2) The elements instruction for complicity relieved the prosecution of its burden of proof.  (*Id.* at 8-9).

> (3) The verdicts were not supported by sufficient evidence.  (*Id.* at 8, 10).

> (4)  Trial counsel rendered ineffective assistance by failing to exercise a peremptory challenge.  (*Id.* at 11).

> (5)  Appellate counsel rendered ineffective assistance by failing to present issues concerning: (a) juror bias under *Batson v. Kentucky*, 476 U.S. 79 (1986); (b) prosecutorial misconduct during closing argument; (c) the omission of a unanimity instruction; (d) the unconstitutional use of a sentence enhancer; and, (e) the violation of Applicant's Fourth Amendment rights under *Georgia v. Randolph*, 547 U.S. 103 (2006). (*Id.* at 12-15).

In an order entered on January 9, 2014, Magistrate Judge Boyd N. Boland directed Respondents to file a pre-answer response limited to addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A) if Respondents intended to raise those affirmative defenses in this action.  Respondents filed a Pre-Answer Response in which they conceded that the instant action was filed within the one-year limitation period set forth in 28 U.S.C. § 2244(d).  (ECF No. 13, at 3-6).  Respondents further conceded that claim 4 was exhausted in the state courts.  (*Id.* at 10).  Respondents argued, however, that claims 1, 2, 3 and 5 were procedurally barred.  (*Id.* at 10-19).

On June 18, 2014, the Court entered an Order, dismissing claim 1 as procedurally defaulted.  (ECF No. 21, at 22).  The Court rejected Respondent's exhaustion/procedural default defense for claims 2, 3 and 5 and ordered Respondents to file an Answer within 30 days.  (*Id.*).

## II.  STANDARD OF REVIEW

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1).  *See id*. at

1018.

If a clearly established rule of federal law is implicated, the court must determine

whether the state court's decision was contrary to or an unreasonable application of

that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law
> if: (a) "the state court applies a rule that contradicts the governing law set
> forth in Supreme Court cases"; or (b) "the state court confronts a set of
> facts that are materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that] precedent."
> *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405).  "The word 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of
> clearly established federal law when it identifies the correct governing
> legal rule from Supreme Court cases, but unreasonably applies it to the
> facts.  *Id.* at 407-08.  Additionally, we have recognized that an
> unreasonable application may occur if the state court either unreasonably
> extends, or unreasonably refuses to extend, a legal principle from
> Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry.  *See Williams*, 529 U.S. at 409–10.  "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather that application must also be unreasonable."  *Id*. at 411. "[A] decision

is 'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law."  *Maynard*,

468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires
> considering the rule's specificity. The more general the rule, the more

5

> leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (internal quotation marks omitted).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

6

### B. *Pro Se* Litigant

Applicant is proceeding *pro se*.  The court thus "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by

attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations

omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a pro se

litigant's "conclusory allegations without supporting factual averments are insufficient to

state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th

Cir. 1991).  The court may not assume that an applicant can prove facts that have not

been alleged, or that a respondent has violated laws in ways that an applicant has not

alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

459 U.S. 519, 526 (1983).  An applicant's pro se status does not entitle him  to an

application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### III.  MERITS OF CLAIMS

### A.  Claim Two

For his second claim, Applicant contends that the elements instruction for

complicity relieved the prosecution of its burden to prove every element of the crime

beyond a reasonable doubt.  (ECF No. 6, at 8-9).

The government must prove beyond a reasonable doubt every element of a

charged offense. *In re Winship*, 397 U.S. 358 (1970).   In the context of jury

instructions, the constitutional inquiry is "whether there is a reasonable likelihood that

the jury understood the instructions to allow conviction based on proof insufficient to

meet the *Winship* standard." *Victor v. Nebraska*, 511 U.S., 1, 6 (1994); *see also Estelle

v. McGuire*, 502 U.S. 62, 71-72 (1991) (stating that federal habeas relief is not

warranted unless the petitioner can establish that the challenged jury instruction so

tainted the trial as to deprive him of due process). Further, jury instructions "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 71-72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

The complicity instruction given to the jury at Applicant's trial stated:

A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, each of the following must be established beyond a reasonable doubt:

1. A crime must have been committed;

2. Another person must have committed the crime;

3. The defendant must have had knowledge that the other person intended to commit the crime;

4. The defendant must have had the intent to promote or facilitate the commission of the crime; and

5. The defendant must have aided, abetted, advised, or encouraged the other person in the commission or planning of the crime.[2]

*See* CJI-Crim 6:04; COLO. REV. STAT. ("C.R.S.") § 18-1-603 (2004).

Applicant's trial counsel objected to the complicity instruction because it was "confusing."[3] Defense counsel's proposed additional instructions addressing "mere presence" and whether the jury could convict Applicant as a complicitor without knowing the identity of the principal, were rejected by the trial court.[4]

On direct appeal, Applicant argued that the complicity instruction violated due process because it failed to instruct the jurors on the "dual mental state" required to find

---

[2]State Court R., Court File, Instruction No. 25, at 269.

[3]*Id.*, 5/18/05 Trial Tr., at 40.

[4]*Id.* at 37-40; *id.*, 5/19/05 Trial Tr., at 3-4; Court File, at 219, 221 **.**

him guilty as a complicitor.  (ECF No. 13-4, at 13).  He further argued that the

instructions did not clarify whether Applicant was being charged as a complicitor as to

all or some of the charges.  (ECF No. 13-2, at 35-36).  Applicant  contended that the

trial court was obliged to explain to the jurors, in response to the jury's questions

seeking clarification of complicity liability,[5]  that the jury "must not only find that the

prosecutor proved all of the elements of the complicity instruction, but also that . . . Mr.

Zuniga, as a complicitor acted after deliberation, and specifically intended to cause the

death of another person."  (*Id*. at 38).

In *Zuniga I*, the Colorado Court of Appeals rejected Applicant's claim on the

following grounds:

> Complicity is a legal theory "by which an accomplice may be held
> criminally liable for a crime committed by another person if the accomplice
> aids, abets, or advises the principal, intending thereby to facilitate the
> commission of a crime. *Bogdanov v. People*, 941 P.2d 247, 250 (Colo.),
> amended, 955 P.2d 997 (Colo. 1997), and disapproved of on other
> grounds by *Griego v. People*, 19 P.3d 1 (Colo. 2001). Our complicity
> statute sets forth a dual mental state for the complicitor: "First, the
> complicitor must have the culpable mental state required for the
> underlying crime committed by the principal. Second, the complicitor must
> intend that his own conduct promote or facilitate the commission of the
> crime committed by the principal." *Id*. at 252; see § 18-1-603, C.R.S.
> 2009.

> *Bogdanov* addressed the issue of whether the pattern jury
> instruction, CJI-Crim. 6:04, properly instructed the jury of the dual state of
> mind requirement and thereby protected the defendant's right to due
> process of law. Decided under the now disapproved of structural error
> analysis, *Bogdanov* concluded that the language of the pattern complicity
> instruction sufficiently instructs the jury regarding the dual mental state
> requirement. 941 P.2d at 253-54. The court noted the pattern instruction's
> use of the word "crime" and reasoned that "the defendant could not have
> intended his participation to further the crime unless he also intended the
> crime to occur. For him to intend that the crime occur, he would
> necessarily share the principal's mental state." *Id*. at 254.

---

[5]State Court R., Court File, at 232, 237.

A host of other Colorado cases reaffirm the holding in *Bogdanov* and approve of the pattern complicity instruction. *See, e.g., People v. Collins*, 187 P.3d 1178, 1184-85 (Colo. App. 2008), *People v. Fisher*, 9 P.3d 1189, 1192 (Colo. App. 2000). *People v. Bass*, 155 P.3d 547 (Colo. App. 2006), addresses Zuniga's argument directly, and rejects it. Id. at 552. We agree with *Bass*, and hold that the pattern complicity instruction correctly instructs the jury. We therefore discern no error.

Defendant's reliance on *People v. Williams*, 23 P.3d 1229 (Colo. App. 2000), is misplaced. In *Williams*, the trial court gave the pattern complicity instruction to the jury, and later clarified complicity's mens rea requirement in response to a juror question. Zuniga argues that the conviction in *Williams* was only upheld on appeal because the court's response clarified what would have otherwise been an insufficient jury instruction. We do not read Williams to require the clarification because the division concluded "that there was no reversible error in the instruction." *Id*. at 1232. The division held that the trial court did not err in refusing the defendant's tendered instruction, and did not question the holding in *Bogdanov*. Subsequent Court of Appeals decisions have upheld the validity of the pattern instruction absent any clarification. *See, e.g.*, *Bass*, 155 P.3d 547. We likewise conclude that the pattern instruction does not require any clarification, and that the trial court here did not err in giving the pattern instruction.

(ECF No. 13-4, at 14-17).

As an initial matter, the state appellate court's determination that the complicity instruction at Applicant's trial comported with Colorado law is binding on this federal habeas court. *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("This Court, however, repeatedly has held that state courts are the ultimate expositors of state law and that we are bound by their constructions except in extreme circumstances not present here.") (citations omitted). The Court does not perceive any constitutional error in this ruling. Indeed, in *Bogdanov*, the Colorado Supreme Court relied on federal due process principles in deciding that the pattern complicity instruction was constitutional. *See Bogdanov*, 941 P.2d at 249, 252.

The Court finds that the state appellate court's determination of Applicant's claim was consistent with controlling federal law.  When the instructions are considered as a whole, there is no reasonable likelihood that the jury applied the complicity instruction in a way that lessened the prosecution's burden of proof, or otherwise violated the Constitution.  The effect of the jury instructions, as a whole, was to require the prosecution to prove all of the elements of complicity beyond a reasonable doubt. As discussed in Section III.B, *infra*, there was sufficient evidence to support the jury's finding that the dual state of mind requirement was satisfied to convict Applicant under a complicity theory.  Accordingly, Applicant is not entitled to federal habeas relief for his second claim.

## B.  Claim Three

In claim three, Applicant maintains that the verdicts were not supported by sufficient evidence.  (ECF No. 6, at 8, 10).  Specifically, he asserts that the evidence did not prove, beyond a reasonable doubt, that he intended to cause the death of the victim after deliberation.  (*Id.*).

A constitutional challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979).  Evidence is sufficient to support a conviction as a matter of due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Coleman v. Johnson*, ___ U.S. ___, 132 S.Ct. 2060, 2064 (2012) (quoting *Jackson*, 443 U.S. at 319) (emphasis in the original).  The Court looks at both direct and circumstantial evidence in determining the sufficiency of the evidence.  *See Lucero v. Kerby,* 133 F.3d 1299, 1312 (10th Cir. 1998).  A federal habeas court's review under *Jackson* is "sharply limited, and a court faced with a record

of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004) (quotations and alterations omitted).  The Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

In applying *Jackson*, the Court looks to state law to determine the substantive elements of the offense.  *See Jackson*, 443 U.S. at 324 n.16; *Valdez v. Bravo*, 373 F.3d 1093, 1097 (10th Cir. 2004).

In *Zuniga I*, the Colorado Court of Appeals applied a state law standard similar to the *Jackson* standard (ECF No. 13-4, at 17-18), and rejected Applicant's claim on the following grounds:

> A person is guilty of first degree murder after deliberation if, after deliberation and with the intent to cause the death of another person, he causes the death of that person. § 18-3-102(1)(a), C.R.S. 2009. "Deliberation" requires not only "intent," but also that "the decision to commit the act has been made after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner." § 18-3-101(3), C.R.S. 2009. Although deliberation requires that a design to kill precede the killing, the length of time required for deliberation need not be long. *People v. Bartowsheski*, 661 P.2d 235, 242 (Colo. 1983).
>
> The evidence in the record before us, when viewed in the light most favorable to the prosecution, establishes that after flashing rival gang signs back and forth with a group of high school age boys, Zuniga and Stancil followed their vehicle down a residential street, pulled up alongside, fired six to eight shots at the driver and passengers, and killed the driver. The jury could have reasonably inferred that this series of actions was the result of a series of deliberative choices, satisfying the requirements of first degree murder after deliberation. The verdict was

therefore supported by sufficient evidence.

(*Id.* at 18-19).

The state court's factual findings are presumed correct and are supported by the

state court record.[6]  Applicant does not point to any clear and convincing evidence to

the contrary.  Instead, he argues in the Amended Application that "the only evidence of

deliberation was speculation that the driver of the white Honda dropped Ms. Wofford off

at her apartment and then returned to the 7-11, and the prosecutor's argument that

following the boys in the car showed planning and forethought."  (ECF No. 6, at 10).

Applicant maintains that other evidence showed that the white Honda did not leave the

7-11 before the Allen car, and that the boys in both cars were yelling at each other while

driving down the street side by side, "which may have provoked the shooting as much

as any previous flashing of any gang signs."  (*Id.*).  However, on federal habeas review,

the court does not weigh conflicting evidence but rather presumes that the jury resolved

any conflict in the factual evidence in favor of the prosecution.  *Turrentine*, 390 F.3d at

1197.

The Court finds and concludes that the Colorado Court of Appeals' resolution of

Applicant's sufficiency of the evidence claim was consistent with the *Jackson* standard.

Applicant therefore is not entitled to federal habeas relief for claim three.

## C.  Claim Four

For his fourth claim, Applicant asserts that trial counsel rendered ineffective

assistance by failing to exercise a peremptory challenge.  (ECF No. 6, at 11).

To prevail on an ineffective-assistance-of-counsel (IAC) claim, Applicant must

---

[6] State Court R., 5/10/05 Trial Tr. (Thomas Allen, Jr., testimony); 5/11/05 Trial Tr., (Thomas Wilson testimony); 5/12/05 Trial Tr. (Michael Johnson and David Gallegos testimony); 5/13/05 Trial Tr. (Robert Humphrey testimony).

show that: (1) counsel's legal representation fell below an objective standard of

reasonableness; and (2) "the deficient performance prejudiced the defense." *Strickland*

*v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's

performance is highly deferential. *Id.* at 689. Counsel's decisions are presumed to

represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally

ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v.*

*Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted). Under the

AEDPA standard of review, "the question is not whether counsel's actions were

reasonable. The question is whether there is any reasonable argument that counsel

satisfied *Strickland*'s deferential standard." *Richter*, 131 S.Ct. at 788.

Prejudice exists when there is a reasonable probability that, but for counsel's

defective representation, the result of the proceeding would have been different.

*Strickland*, 466 U.S. at 693. The likelihood of a different result must be substantial, not

just conceivable. *Id.* The Court need not address both prongs of the *Strickland* inquiry

if Applicant's claim fails on one. *Id.* at 697.

In *Zuniga II*, the Colorado Court of Appeals rejected Applicant's IAC claim on the

following grounds:

> The trial court excused a juror mid-trial, replacing him with an
> alternate. In his motion, Zuniga claimed that counsel was ineffective in
> failing to raise a peremptory challenge to the alternate juror or request an
> instruction directing the panel to infer no prejudice as a result of the
> excusal.
>
> Assuming, for the sake of argument, that trial counsel's omissions
> constituted deficient performance, Zuniga has not alleged any facts which
> would suggest that, but for counsel's deficient performance, the outcome
> of the trial would have been different. For example, Zuniga has not
> alleged that the replacement juror was biased or unable to render an
> impartial verdict. Nor has he alleged any facts that indicate that the jury
> became unfair or biased as a result of the dismissal and replacement of

the juror.

Rather, Zuniga states that he and trial counsel "did not care for" the alternate who replaced the dismissed juror, and would have preferred a different alternate. This is insufficient to demonstrate *Strickland* prejudice. *See People v. Johnson*, 757 P.2d 1098, 1100 (Colo. App. 1988) (defendant is not entitled to a trial before any particular juror).

(ECF No. 13-9, at 4-5).

The Court finds that the state appellate court's resolution of Applicant's IAC claim comported with *Strickland* because Applicant has not shown that he was prejudiced by counsel's failure to raise a peremptory challenge to the alternate juror. Applicant does not point to any evidence of juror bias. *See Patton v. Yount*, 467 U.S. 1025, 1035 (1984) *(*a juror is biased where he "ha[s] such fixed opinions that [he] could not judge impartially the guilty of the defendant."). That Applicant would have preferred a different juror does not establish that the juror who sat was impartial. *See Hooks v. Workman*, 689 F.3d 1148, 1176 (10th Cir. 2012) (stating that "'[a] defendant has no constitutional or other right to the service of a particular juror.'") (quoting *United States v. Joseph*, 892 F.2d 118, 124 (D.C. Cir.1989)).

Accordingly, claim four is without merit and will be dismissed.

## D.  Claim Five

In claim five, Applicant contends that appellate counsel rendered ineffective assistance by failing to present issues concerning: (a) juror bias under *Batson v. Kentucky*, 476 U.S. 79 (1986); (b) prosecutorial misconduct during closing argument; (c) the omission of a unanimity instruction; (d) the unconstitutional use of a sentence enhancer; and, (e) the violation of Applicant's Fourth Amendment rights under *Georgia v. Randolph*, 547 U.S. 103 (2006).  (ECF No. 6, at 12-15).

The *Strickland* standard also applies to claims of ineffective assistance of

appellate counsel.  *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003); *Hannon v. Maschner*, 845 F.2d 1553, 1558 (10th Cir. 1988).

"[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).  A habeas court will consider the merits of a claim of ineffective assistance of appellate counsel where "the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal," or where "the omitted issue has merit but is not so compelling." *Malicoat v. Mullin*, 426 F.3d 1241, 1249 (10th Cir. 2005).  Whereas a plainly meritorious claim "may directly establish deficient performance," a less compelling claim must be examined in relation to the rest of the appeal.  *Id.*; *see also Upchurch v. Bruce*, 333 F.3d 1158, 1164 n.3 (10th Cir. 2003) ("dead bang winner" is not necessary for habeas applicant to prevail on claim of ineffective assistance of appellate counsel, but may be sufficient). "Although it is possible to bring a *Strickland* claim based on counsel's failure to raise a particular issue, 'it is difficult to demonstrate that counsel was incompetent.'" *Upchurch*, 333 F.3d at 1163 (quoting *Robbins*, 528 U.S. at 288).

### 1. Juror bias under *Batson*

Applicant claims that appellate counsel was ineffective in failing to assert a claim of juror bias under *Batson*.  He argues that the prosecution's use of a peremptory challenge to excuse a female black juror was based on race because the proffered reason for excusal–that she 'identif[ied] with" the Applicant because she had a son who was approximately the Applicant's age–was pretext for discrimination, as evidenced by the facts that other white jurors who had sons approximately the same age as Applicant

16

were not excused.  (ECF No. 6, at 12).

In *Batson*, the Supreme Court held that purposeful discrimination based on the race of a juror violates the Equal Protection Clause of the Fourteenth Amendment.  476 U.S. at 84.  *Batson* provides a three-step analysis for determining whether a peremptory strike runs afoul of this rule: (1) the defendant must present a prima facie case by showing facts supporting an inference of discriminatory purpose; (2) if the defendant satisfies step one, the burden shifts to the government to provide a race-neutral justification; and (3) if the government can do this, the court then decides whether purposeful racial discrimination nonetheless occurred. *See Johnson v. California*, 545 U.S. 162, 168 (2005).

"A [race-]neutral explanation . . . means an explanation based on something other than the race of the juror."  *Hernandez v. New York*, 500 U.S. 352, 360 (1991). *See also Rice v. Collins*, 546 U.S. 333, 338 (2006) ("Although the prosecutor must present a comprehensible reason, '[t]he second step of this process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices.") (quoting *Purkett v. Elem*, 514 U.S. 765, 767-68, (1995) (per curiam)).

The final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor.  *Purkett*, 514 U.S. at 768.  "[T]he disproportionate exclusion of members of a certain race" may be considered "as evidence that the prosecutor's stated reason constitutes a pretext for racial discrimination."  *Hernandez*, 500 U.S. at 363.  A trial court's resolution of step three is entitled to great deference on appeal.  *Id.* at 364-65.

"[T]he ultimate burden of persuasion regarding racial motivation rests with, and

never shifts from, the opponent of the strike." *Purkett*, 514 U.S. at 768.

In *Zuniga II*, the Colorado Court of Appeals applied the federal standards derived from *Batson*, *see* ECF No. 13-9, at 8, and rejected Applicant's claim on the following grounds:

> Here, defense counsel challenged the prosecutor's use of a peremptory challenge to remove an African-American juror. In response, the prosecutor stated that he felt the juror was "very much identifying with" defendant, and that he was concerned because the juror "[had] a young son approximately the same age as the defendants." The trial court accepted this as a race-neutral explanation for the challenge and dismissed the juror.

> We agree with the trial court's assessment that the challenge was not made with discriminatory intent. The prosecutor's explanation was race-neutral, and the record reflects that the jury ultimately included four people of color.

(*Id.* at 8-9).

The Court finds that the state appellate court's resolution of Applicant's claim was a reasonable application of *Batson.* The state court record demonstrates that the trial court applied the three-step procedure mandated by the Supreme Court and concluded that the prosecutor's state reason for excusing the juror was race-neutral.[7] Further, the jury included four people of color,[8] which weighs strongly against a finding of pretext. *See Hernandez*, 500 U.S. at 363.

Because there is no "reasonably probability of a favorable result had [Applicant's] appellate counsel raised the omitted issue," *Malicoat*, 426 F.3d at 1249, claim 5(a) will be dismissed.

---

[7]State Court R., 5/9/05 Trial Tr., at 274-77.

[8]*Id.* at 276.

### 2.  Prosecutorial misconduct during closing argument

In claim 5(b), Applicant asserts that appellate counsel was ineffective in failing to raise the issue of prosecutorial misconduct during closing argument. Specifically, Applicant alleges that during closing remarks the prosecutor argued that if Applicant was convicted, he would get more tattoos showing that his crimes were a badge of honor.  (ECF No. 6, at 13).

Habeas relief is appropriate when a prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also United States v. Young*, 470 U.S. 1, 11 (1985) ("Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.").  In applying this demanding standard, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden*, 699 F.2d at 1036; *see also Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir. 2000) ("not every improper or unfair remark made by a prosecutor will amount to a federal constitutional deprivation.").

In *Zuniga II*, the Colorado Court of Appeals concluded that appellate counsel was not ineffective in failing to raise a claim of prosecutorial misconduct:

> Over defense counsel's objection, the prosecutor concluded her rebuttal closing argument with a reference to Zuniga's tattoos:
>
>> Perhaps at the conclusion of this case, Mr. Zuniga can add a line to his tattoo. Where it says, "Hated by many, loved by few, respected by all," perhaps he can add the line, "convicted by twelve."
>
> Throughout the trial, the prosecution used Zuniga's tattoos as evidence of his gang affiliation for proof of his intent. The prosecutorial theory was that Zuniga, whose tattoos included a "CK," which allegedly

stood for "Crip Killer," was a member of the Bloods and shot at the victims after one of them displayed a Crips gang sign.

Accordingly, we conclude that the prosecutor's reference to the tattoo was a proper oratorical embellishment regarding a central issue in the case. *People v. Allee*, 77 P.3d 831, 837 (Colo. App. 2003).

(ECF No. 13-9, at 9-10).[9]

The state appellate court's factual finding that the prosecution used Applicant's tattoos to establish identity and proof of his intent, is supported by the state court record.[10]  Applicant has not demonstrated that the prosecutor's isolated remark during closing argument, made in the context of referencing Applicant's gang affiliation, affected the jury's ability to judge the evidence fairly.  Because Applicant was not prejudiced by the prosecutor's remark, appellate counsel was not constitutionally ineffective in failing to raise the issue of prosecutorial misconduct on direct appeal.

Claim 5(b) is without merit and will be dismissed.

### 3.  Omission of an unanimity instruction

Applicant next contends that appellate counsel was ineffective for failing to challenge the trial court's refusal to give the unanimity instruction requested by defense counsel.  (ECF No. 6, at 14).

During the jury instruction conference, defense counsel requested that, if a complicity instruction was going to be given, special interrogatories be issued requiring the jury to unanimously agree on the acts that are attributed to each defendant.[11] The

---

[9] *See also* State Court R., 5/19/05 Trial Tr., at 104-05.

[10] *See, e.g., id.*, 5/10/05 Trial Tr., at 96-97, 99-102; 187; 5/19/05 Trial Tr., afternoon session, at 13-14, 47, 104; *see also* 5/12/05 Trial Tr., at 63; 113; 170; 5/13/05 Trial Tr., at 29-32; 5/19/05 Trial Tr., at 46.

[11] *Id.*, 5/18/05 Trial Tr., afternoon session, at 5-10, 51-52.

trial court ruled that a general verdict was proper.[12]

The Supreme Court "has never held jury unanimity to be a requisite of due process of law" in state criminal trials. *Johnson v. Louisiana*, 406 U.S. 356, 359 (1972); *see also McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 130 S.Ct. 3020, 3035 n.14 (2010) (noting Court's holding in *Johnson* that "although the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not require a unanimous jury verdict in state criminal trials.").

Furthermore, in returning a general verdict, the jury is not required to agree upon a single means of commission. *See Schad v. Arizona*, 501 U.S. 624, 631 (1991). "[D]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Id.* at 631-32.[13] *See also Richardson v. United States*, 526 U.S. 813, 817 (1999) ("a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime," citing *Schad*, 501 U.S. at 632-33).

In *Zuniga II*, the Colorado Court of Appeals determined the following with respect to Applicant's claim:

> A jury is only required to reach a unanimous verdict on the charge, not the alternative theories offered in support of the charge. *People v.*

---

[12]*Id.* at 51-52.

[13]The Supreme Court in *Schad* did recognize that there was a "point at which differences between means [of committing a crime] become so important that they may not reasonably be viewed as alternatives to a common end, but must be treated as differentiating what the [Due Process Clause] requires to be treated as separate offenses." *Schad*, 501 U.S. at 633. However, the Court does not construe claim 5(c) to assert that the crimes of which Applicant was convicted rise to the level of the potential due process violation contemplated by *Schad*. And, Applicant did not present the contours of such a due process claim to the state courts.

> *Hall*, 60 P.3d 728, 731 (Colo. App. 2002) (jury was not required to determine unanimously whether the defendant had committed first degree murder as a principal or as a complicitor).
>
> Here, whether Zuniga acted as a principal or a complicitor raised alternative legal theories describing two means of committing the charged crimes. Despite the fact that there were multiple shots fired which resulted in multiple charges, it was undisputed that there was only one shooter. Thus, the court was not required to provide a jury instruction requiring the jury to unanimously conclude that Zuniga acted as either a principal or a complicitor. *See id.*

(ECF No. 13-9, at 10-11).

Again, the state appellate court's determination that a unanimity instruction was not required in Applicant's case, under Colorado law, is binding on this federal habeas court. *See Bradshaw*, 546 U.S. at 76; *Mullaney*, 421 U.S. at 691.  Further, Applicant was not entitled to a unanimity instruction as a matter of federal due process. Accordingly, appellate counsel's failure to raise the issue was not deficient performance, nor did it prejudice the Applicant.

Claim 5(c) lacks merit and will be dismissed.

### 4.  Unconstitutional sentence enhancer

In claim 5(d), Applicant asserts that appellate counsel should have challenged a sentence enhancer as unconstitutional.  (ECF No. 6, at 14-15). Specifically, he contends that because the evidence at trial failed to establish that he used or threatened the use of a deadly weapon during the offenses, enhancement of his sentence as a crime of violence, pursuant to C.R.S. § 18-1.3-406 (2004), was unlawful.

In *Zuniga II*, the Colorado Court of Appeals analyzed this claim as follows:

> Section 18-1.3-406(1)(a), C.R.S. 2012 requires mandatory sentencing for "any person convicted of a crime of violence."
>
> Complicity is not a substantive offense. *People v. Thompson*, 655 P.2d 416, 418 (Colo. 1982). Rather, it is a prosecutorial theory by which a

defendant becomes accountable for a crime committed by another. *Id*.

> For the conspiracy and attempt charges, the jury made specific findings, in accordance with section 18-1.3-406, that Zuniga "did use or possess and threaten the use of a deadly weapon." Thus, regardless of the theory under which the jury convicted him, Zuniga was convicted of multiple crimes of violence. Accordingly, the mandatory sentencing provisions of section 18-1.3-406 applied.

(ECF No. 13-9, at 11-12).

At the time Applicant committed the offenses, a crime-of-violence sentencing enhancement applied to a list of enumerated crimes, including murder and second degree assault, as well as conspiracy and attempt crimes, where the defendant "used, or possessed and threatened the use of, a deadly weapon." *See* § 18-1.3-406(1)(a) and (2)(a)(I), C.R.S. (2004). For an enumerated crime to constitute a crime of violence, a special finding generally must be charged and found by the jury. *See* § 18-1.3-406(2)(a)(I)(A), C.R.S. (2004).

Crime-of-violence sentencing applies to offenses– *i.e,* crimes. *Palmer v. People*, 964 P.2d 524, 528 (Colo. 1998). Complicity is not a separate and distinct crime under the Colorado Criminal Code, but is rather a legal theory of liability. *Id.*; *see also* § 18-1-104. *Id.*

In Applicant's case, the information charged him with crimes of violence in counts 11 and 12,[14] and the verdict forms finding Applicant guilty of three counts of criminal attempt to commit murder in the first degree–after deliberation, and one count of conspiracy to commit murder in the first degree–after deliberation, contained the deadly weapon finding.[15] Because Applicant was sentenced in accordance with

---

[14]State Court. R., Court File, at 56-57 **.**

[15]*Id.* at 275-282.

Colorado's crime-of-violence statute, appellate counsel's failure to challenge Applicant's enhanced sentence on direct appeal was not substandard performance, or prejudicial.

Claim 5(d) lacks merit and will be dismissed.

### 5. Violation of Fourth Amendment

Finally, Applicant maintains in claim 5(e) that his Fourth Amendment rights were violated under *Georgia v. Randolph*, 547 U.S. 103 (2006), which was decided while his case was pending on direct appeal.  (ECF No. 6, at 15).

In *Georgia v. Randolph*, the Supreme Court held "that a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable to him on the basis of consent given to the police by another resident."  547 U.S. at 120.

In *Zuniga II*, the Colorado Court of Appeals rejected Applicant's claim that appellate counsel should have challenged the legality of his convictions on the basis of *Randolph*:

> We conclude that the rule announced in *Randolph* is inapposite to the circumstances surrounding the search of Zuniga's girlfriend's home. *Randolph* applies to situations where the search is warrantless.  Here, the search of Zuniga's girlfriend's home was conducted pursuant to a search warrant.

(ECF No. 13-9, at 12).

Applicant's unsupported assertion in the Amended Application that "[t]he police did not have a warrant to search the residence," (ECF No. 6, at 15), falls short of the clear and convincing evidence needed to rebut a state court's factual finding under 28 U.S.C. § 2254(e)(1), and is belied by the state court record.  In an Affidavit in Support of Warrantless Arrest, filed in the state district court, the affiant states that he and his fellow officers from the Aurora Police Department found a loaded 9mm handgun during

the execution of a search warrant at 16831 East Hawaii Drive, Unit A, Aurora, Colorado, on July 2, 2004.[16] Further, Applicant's trial counsel filed a Motion to Suppress Evidence from an Illegal Search on November 17, 2004, in which he argued for suppression of the evidence seized during the July 2, 2014 search because "there was no probable cause to justify issuance of the search warrant."[17]  Accordingly, because Applicant's claim under *Randolph* lacks merit, his appellate counsel was not ineffective in failing to raise *Randolph* as a basis for over-turning Applicant's convictions or sentence.

Claim 5(e) will be dismissed.

## IV.  ORDERS

Accordingly, it is

ORDERED that the Amended Application for a Writ of Habeas Corpus 2254 (ECF No. 6), filed September 23, 2013, by Applicant, Genero Zuniga, is DENIED;

2. That this case is DISMISSED WITH PREJUDICE;

3. That there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c);

4.  Leave to proceed *in forma pauperis* on appeal is denied.  Applicant may file a motion in the United States Court of Appeals for the Tenth Circuit.


Dated this 13th day of February, 2015.

BY THE COURT:

_____

William J. Martinez
United States District Judge

---

[16] State Court R., Court File, at 36.

[17] *Id.* at 135.